**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNE ELMORE,<br><br>            Plaintiff,<br>    v.<br>NEW ALBERTSON'S, INC.; and DOES 1 through 50,<br><br>            Defendants. | Case No. CV 11-04802-ODW (JCx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17]** |

Pending before the Court is Defendant New Albertson's, Inc.'s Motion for Summary Judgment. (ECF No. 17.) The Court has carefully considered the parties' briefs, the evidence submitted in support of and in opposition to those briefs, and the parties' oral arguments.

## I.  BACKGROUND

Plaintiff, Jeanne Elmore, began working for Albertson's in 2000. (Elmore Decl. ¶ 2.) In early 2006, a worker's compensation doctor diagnosed Elmore with Carpal Tunnel Syndrome ("CTS") resulting from the tasks Elmore was required to perform at her job. (Elmore Dep. 38:13–20, 44:16–45:21.) Elmore went on disability leave from February 19, 2007 to October 15, 2007, during which time she had surgery

to treat her CTS. (Elmore Decl. ¶ 4.) After the surgery, Dr. Stuart Kuschner cleared her to work with no restrictions. (Elmore Dep. Ex. 16.) Upon returning to work, Elmore was placed in a general merchandise position in accordance with her doctor's recommendation. (*Id.* ¶ 5.) She worked in this position at the Newbury Park Albertson's store until the end of 2009. (*Id.* ¶¶ 6–7, 10.) During this time, Elmore did not ask for any accommodations relating to her hands. (Elmore Dep. 81:16-20.) At the same time, Elmore also held a second job as a general clerk at a CVS store. (*Id.* 39:16–40:17.)

In November 2009, Elmore complained of wrist pain and went to see Dr. Jerold Litoff. (SUF 11.) Dr. Litoff reported that Elmore had "no evidence of recurrence of her [CTS] . . . but did have evidence of . . . lateral humeral epicondylitis [tennis elbow]." (Elmore Dep. Ex. 27 at 5.) Dr. Litoff cleared Elmore to work her regular duties. (*Id.*)

In 2010, Elmore transferred to the Albertson's store in Simi Valley, California, which was closer to her home, in order to care for her ill son. (Elmore Decl. ¶¶ 10–11.) For this transfer, Elmore sought a position in the general merchandise department, for which there were no openings, so instead she accepted a position in the deli department. (*Id.*)

Elmore contends that at the Simi Valley Albertson's store, she made it known to the store manager, Carlton Hurst, that her hands hurt doing the work in the deli, and that she wished to transfer to a general merchandise position when one became available. (*Id.* ¶ 11.) Elmore further contends that when a general merchandise position opened up, Hurst failed to accommodate her, and instead hired another worker. (*Id.* ¶ 14.)

On May 5, 2010, Albertson's warned Elmore for violating company policy when she packaged deli meat and marked the price down for her own purchase. (Hurst Decl. ¶¶ 4–6; Ex. 2.) Elmore contends she had permission from her supervisor to do this, since the deli meats were expired and could not be sold. (Elmore Decl.

1  ¶ 17.) Hurst warned Elmore that she would be terminated for any similar violations in
2  the future. (*Id.* ¶ 18; Hurst Decl. Ex. 2.) Although Elmore desired a different position
3  and loathed Hurst's demeanor towards her, she never requested a transfer to a
4  different Albertson's store nor checked job postings for better positions (e.g., general
5  merchandising) at different Albertson's stores. (Elmore Decl. ¶¶ 12–13; Elmore Dep.
6  126:4–11.)

7  On June 15, 2010, after a report that there was no fried chicken breasts left in
8  the deli section, Hurst reviewed a store video from the previous night, which he
9  believed showed Elmore giving an unauthorized discount to a customer by giving ten
10 large pieces of chicken for a eight-piece chicken dinner. (Hurst Decl. ¶ 8.) Hurst
11 discussed this matter with management and Elmore, and terminated her on June 21,
12 2010. (*Id.* ¶¶ 11–13.) Albertson's claims this termination was a direct result of the
13 May 5, 2010 and June 15, 2010 incidents. (*Id.* ¶ 9.)

14 Albertson's now seeks summary judgment on the entirety of Elmore's action.

## II. LEGAL STANDARD

16 Summary judgment should be granted if there are no genuine issues of material
17 fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.
18 P. 56(c). The moving party bears the initial burden of establishing the absence of a
19 genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
20 Once the moving party has met its burden, the nonmoving party must go beyond the
21 pleadings and identify specific facts that show a genuine issue for trial. *Id.*

22 A genuine issue of material fact must be more than a scintilla of evidence, or
23 evidence that is merely colorable or not significantly probative. *Addisu v. Fred*
24 *Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the
25 resolution of that fact might affect the outcome of the suit under the governing law.
26 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if
27 the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving
28 party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts

are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Further, the Court need not "scour the record in search of a genuine issue of triable fact"—it is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Finally, conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## III. DISCUSSION

Albertson's moves for summary judgment with respect to Elmore's entire Complaint, which asserts six claims: (1) failure to accommodate disability; (2) failure to engage in the interactive process; (3) retaliation; (4) disability discrimination; (5) wrongful termination in violation of public policy; and (6) intentional infliction of emotional distress. Albertson's motion presents several theories why Elmore's claims must fail as a matter of law. The Court's discussion follows Albertson's organization.

### A. Elmore did not suffer a disability under the FEHA

Elmore's first, second, fourth, and fifth claims allege violations of California's Fair Employment and Housing Act ("FEHA"). Cal. Gov't Code § 12940. One of the essential elements of a section 12940 claim is that a plaintiff must show she suffered a disability. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 254 (2000). For purposes of FEHA, a "physical disability" means the plaintiff has a "physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss" that "limits a major life activity." Cal Gov't Code § 12926(l)(1). An impairment "limits a major life activity if it makes the achievement of the major life activity difficult." Cal. Gov't Code § 12926(l)(1)(B)(ii). "Working" and "social activities" are recognized as major life activities. Cal. Gov't Code § 12926(l)(1)(B)(iii).

/ / /

The Court recognizes that FEHA sets a higher level of protection to disabled persons when compared to federal law. Cal Gov't Code § 12926.1(a). Further, California's definition of "physical disability" requires a "limitation," rather than a "substantial limitation," as required under federal law, of a major life activity. Cal Gov't Code, § 12926.1(d).

Albertson's argued that Elmore's condition does not meet the statutory definition of disability under the FEHA. Specifically, Elmore fails to show that her CTS limited a major life activity. Elmore argues that a genuine issue of material fact exists as to whether her CTS constitutes a disability, as her condition limited her ability to perform necessary job functions while working at Albertson's.

Elmore claims that she had a physical disability, where her CTS hampered her from engaging in certain repetitive activities with her hands, and thus affected her ability to work in the Albertson's deli. (Elmore Dep. 199:12–200:6.) Specifically, Elmore complained that she was unable to snap shut chicken container lids. (*Id.*)

But other evidence suggests that Elmore's CTS did not limit her major life activities. And if her CTS did limit her in some way, it was *de minimus*. For example, Elmore's CTS did not:

- restrict her work in any other manner ("No, I did everything else" (*Id.* at 200:3–201:8));
- prevent her from caring for her ill son (*Id.* at 201:16–19);
- prevent her from caring for herself (*Id.* at 201:20–23);
- hamper her ability to do household chores (*Id.* at 202:6–9);
- prevent her from driving a car (*Id.* at 203:19–204:1); or
- otherwise limit her from performing ordinary daily activities (*Id.* at 204:2–6).

Moreover, two of Elmore's doctors cleared her to work after her CTS surgery without prescribing any work limitations. Immediately after the surgery, Dr. Kuschner cleared her to work with no restrictions. (Elmore Dep. Ex. 16.) Then when

Elmore complained of wrist pain, Dr. Litoff reported that she had "no evidence of recurrence of her [CTS] . . . but did have evidence of . . . lateral humeral epicondylitis [tennis elbow]," and cleared her to work her regular duties. (Elmore Dep. Ex. 27 at 5.) These visits to the doctor were before Elmore's transfer to the Simi Valley Albertson's store.

Further, although Elmore noted that she had some pain in her hands when she worked at the Simi Valley Albertson's store, Elmore did not see a doctor; and only sought medical attention after her termination. (Elmore Dep. 114:7–13; 175:20–176:3.)

The evidence shows that, at most, Elmore experienced some discomfort while performing her job. But the evidence strongly suggests that Elmore's CTS did not limit a major life activity. Further, Elmore cannot point to any case law that holds that CTS is a disability under the FEHA. Because Elmore has failed to present evidence to establish an essential element of her first, second, fourth, and fifth claims, these claims fail as a matter of law. Thus, the Court **GRANTS** Albertson's motion with respect to these claims.

### B.     Elmore fails to establish her retaliation claim

A plaintiff may establish a prima facie case for retaliation by showing that (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the protected activity and the employer's action. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986). Assuming the plaintiff establishes a case for retaliation, the burden shifts to the employer to then articulate a legitimate, non-retaliatory explanation for its actions. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355–56 (2000). It is then up to the plaintiff to show that the termination was pretext for disability discrimination. *Id.* at 356.

To show pretext, and survive summary judgment, a plaintiff must produce "specific and substantial" evidence to allow a reasonable factfinder to conclude either that the employer's nondiscriminatory reason for the discharge is false, or that the true

reason for the discharge was discriminatory. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998); *Nidds v. Schindler Elevator Corp.* 113 F.3d 912, 918 (9th Cir. 1996).

Elmore contends that Hurst, after learning of her CTS, engaged in hyper-scrutiny of her job performance, denied her a change of position, and disciplined her for insufficient reasons. (Elmore Decl. ¶¶ 12–21.) The Court does not find that Elmore has established a prima facie case of retaliation because her evidence does not establish a causal link between her condition and her termination.

Even if she could prove the causal link and establish a prima facie case, Albertson's has provided a legitimate, nondiscriminatory reason for Elmore's termination. Specifically, Elmore violated Albertson's company policy through her conduct in the May 5, 2010 and June 15, 2010 incidents. (Hurst Decl. ¶ 9.)

Further, Elmore cannot show that Albertson's reasons for termination were pretextual to disability discrimination, as her evidence, when considered in a light most favorable to her, fails to show "specific and substantial" facts necessary to establish pretext. The evidence does not show that Albertson's scrutinized or disciplined Elmore more than other employees under the same circumstances. Further, Elmore admits that during her employment, no Albertson's employee made derogatory comments about her CTS condition, or about any other employee's conditions. (Elmore Depo. 204:7–18.) Elmore also cannot dispute that she was on "Final Warning" for violating company policy by marking down deli meats for her own purchase. (Hurst Decl. ¶¶ 4–6; Ex. 2.) And Elmore cannot dispute that her employment was terminated due to Albertson's good-faith belief that she gave a customer an unauthorized discount. (Hurst Decl. ¶¶ 8, 11–13.)

The facts presented do not allow a reasonable factfinder to conclude that Albertson's purpose for termination was false, or that the termination was actually motivated by discrimination. And because Elmore does not meet her burden of proof, the Court **GRANTS** Albertson's motion with respect to this claim.

**C.      Elmore fails to show extreme and outrageous conduct**

Under California law, the elements of a prima facie case for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's conduct. *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).

Albertson's contends that Elmore cannot show the necessary element of extreme and outrageous conduct. To be outrageous, conduct must be so extreme as to "exceed all bounds of that usually tolerated in a civilized society." *Id.* Summary judgment is appropriate if a claim "cannot reasonably be regarded as so extreme and outrageous as to permit recovery." *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991).

In her Complaint, Elmore vaguely alleges that Hurst inflicted emotional distress by refusing to accommodate her condition, thus causing her to sustain further injuries. (Compl. ¶ 64.) Elmore also suggests that she was disturbed and annoyed by Hurst's actions and attitude towards her. (Elmore Decl. ¶¶ 12–13.) Even accepting these allegations as true, this fails to show that as Hurst's actions were extreme or outrageous. Hurst may be a demanding and unpleasant boss, but his actions amounted to everyday management decisions—managing personnel is not outrageous conduct unless these decisions are improperly motivated. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996). The evidence does not show that Hurst's conduct towards Elmore was improperly motivated, especially in light of her "Final Warning." Further, Elmore fails to show that she suffered severe or extreme emotional distress at the hands of her employer. Accordingly, the Court **GRANTS** Albertson's Motion with respect to this claim.

/ / /

/ / /

Case 2:11-cv-04802-ODW-JC Document 39 Filed 08/15/12 Page 9 of 9 Page ID #:744

## IV. CONCLUSION

For the foregoing reasons, Albertson's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

August 15, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**